Appellant, Christopher G. Cirotto, appeals from a judgment of the Franklin County Court of Common Pleas, which affirmed the decision of appellee, Ohio State Unemployment Compensation Board of Review ("board") disallowing benefits for appellant because appellee, Trader Publishing Company ("Trader") terminated appellant for just cause.
Appellant was employed by Trader from August 15, 1991, to January 22, 1996, first as a sales representative, and then as a sales manager. As a sales manager, appellant supervised fourteen sales representatives, mostly women. Trader adopted a written policy, published in Trader's employee handbook, prohibiting sexual harassment. According to the policy, any employee who sexually harassed another employee could be fired without progressive discipline. Appellant received a copy of the employee handbook and understood Trader's policy.
In the spring of 1995, Trader hired Michelle Hartman, Betsy McBride, and Amy Wright as sales representatives. Appellant trained and supervised these three employees. On July 26, 1995, Dana Owens, another sales representative who reported to appellant, complained to Scott Spears, the general manager of Trader's Columbus office, that appellant had made inappropriate sexual comments to her and to Hartman, McBride, and Wright. Spears informed appellant of the complaints. Appellant told Spears he had been joking and had not intended to offend the employees. At Spears' request, appellant apologized to the employees and they accepted his apology. Spears verbally reprimanded appellant, and told appellant that if appellant continued to sexually harass employees, he could be terminated.
In January 1996, Hartman complained to Spears that appellant had sexually harassed her, providing Spears with examples of appellant's offensive conduct. Robert Parker, Trader's employee relations manager, instructed Spears to conduct an investigation into Hartman's complaints.
Spears interviewed Hartman, McBride, Anne Sunico, and other witnesses, all of whom corroborated Hartman's complaints. Spears interviewed appellant, advised him of the complaints made against him, asked appellant to respond to the complaints, and recorded appellant's responses. Appellant was terminated on January 22, 1996, for sexually harassing other employees and for failing to cooperate in the investigation.
Appellant applied on January 25, 1996 for unemployment compensation benefits. On February 17, 1996, the bureau's administrator issued an initial determination of benefits, finding that Trader had separated appellant due to a lack of work. Trader requested reconsideration of the administrator's initial determination. On April 8, 1996, the administrator issued a Decision on Reconsideration, finding Trader had discharged appellant without just cause in connection with work and allowing appellant's claim. On April 25, 1996, Trader appealed the administrator's Decision on Reconsideration to the board, where a board hearing officer conducted an evidentiary hearing on Trader's appeal.
At the hearing, Michelle Hartman testified that appellant sexually harassed her on four occasions:
 (1) Several days after Trader hired Hartman, but before she began working there, appellant telephoned her at home and invited her to go horseback riding with him. Hartman felt that it was inappropriate for appellant, her boss, to ask her for a date, so she declined the invitation. Later that night, appellant again telephoned her and asked her, in the alternative, to go with him to dinner and a movie. She again declined.
 (2) Hartman, McBride, and appellant went to the Ricart Megamall to take photographs. McBride accidentally took several photographs of Hartman's skirt and legs. Later that week in the office, after the photographs were developed, appellant picked up a photograph of Hartman's skirt and legs, turned the photograph upside down, and said, "Hmm, too bad I can't see, you know, up the skirt" (the "photo incident"). (Tr. 176.)
 (3) Hartman testified that appellant asked about her weekend and asked if she had kinky sex or believed in that. (Tr. 174.)
 (4) In December 1995, Hartman was wearing a dress with a loose thread at the bottom. Appellant touched the thread and said, "that would be your Christmas gift to me if that, you know, if the whole dress came unraveled" (the "string incident"). (Tr. 176.)
On August 28, 1996, the board's hearing officer issued a decision finding just cause for appellant's termination and reversing the administrator's Decision on Reconsideration. Appellant appealed to the Franklin County Court of Common Pleas pursuant to R.C. 4141.28(O)(1), and that court issued a decision affirming the board's decision. Appellant appeals, assigning the following errors:
I. THE DECISION WAS UNREASONABLE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE DECISION WAS UNLAWFUL.
III. THE DECISION WAS BASED ON PERJURUS TESTIMONY FROM APPELLANT'S PREVIOUS EMPLOYER'S WITNESS.
IV. THAT THE CASE LAW THAT TRADER PUBLISHING COMPANY'S LAWYERS AS WELL AS THE OHIO STATE UNEMPLOYMENT COMPENSATION BOARD HAVE USED TO SUPPORT THEIR POSITION IN ALL OF THE PRECEDING PLEADINGS HAVE NOTHING TO DO WITH THIS INSTANT CASE.
V. BECAUSE THE DECISION OF MAY 1, 1998, UPON WHICH THIS APPEAL COMES FROM, TOOK 8 MONTHS TO BE MADE, AROUND THE 4TH OR 5TH MONTH, APPELLANT CIROTTO CALLED DOWN AND TALKED TO MAGISTRATE BROWNING WHO WAS REVIEWING THE CASE FOR JUDGE SADLER. MAGISTRATE BROWNING RELAYED THAT SHE WAS STRESSED, WAY BEHIND, AND OVER LOADED WITH CASES TO REVIEW AND DESCRIBED HER POSITION IN THIS MATTER AS THAT OF A "GLORIFIED LAW CLERK."
Appellant's first and third assignments of error are interrelated and thus we address them jointly. Together they assert the decision to disallow benefits is based upon perjured testimony and therefore is against the manifest weight of the evidence. Reviewing courts may reverse "just cause" determinations "if they are unlawful, unreasonable, or against the manifest weight of the evidence." R.C. 4141.28(O). Tzangas, Plaka Mannosv. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696, citingIrvine v. Unemp. Comp. Bd. of Rev. (1985), 19 Ohio St.3d 15,17-18. See, also, Vickers v. Ohio State Bur. of Emp. Serv. (Apr. 22, 1999), Franklin App. No. 98AP-656, unreported (1999 Opinions 888). On review, this court is not "permitted to make factual findings or to determine the credibility of witnesses, [but does] have the duty to determine whether the board's decision is supported by the evidence in the record." Tzangas, at 696.
R.C. 4141.29(D)(2)(a) provides that a claimant who is discharged from his employment "with just cause" is disqualified from receiving unemployment compensation. Vickers, supra. Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act. The act exists "to enable unfortunate employees, who become and remain involuntarily
unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis sic.) Tzangas at 697; see, also, Vickers, supra. "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine at 17, citing Peytonv. Sun T.V. (1975), 44 Ohio App.2d 10, 12.
A finding of just cause depends on the unique factual circumstances of the particular case. Vickers, citing Irvine at 17. "If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause." Tzangas at 698. "The claimant has the burden of proving entitlement to unemployment compensation benefits under the statutory provisions." Vickers, supra, citing Irvine at 17.
Given the assigned error and the applicable law, the issue here resolves to whether the board's determination that appellant was terminated with "just case" is unreasonable, unlawful, or against the manifest weight of the evidence. Appellant contends the board's decision is not supported by the evidence because the testimony was perjured. Most of the alleged discrepancies, however, deal with credibility issues, are within the board's prerogative to resolve, and therefore are without merit.
For example, appellant contends Spears lied when Spears testified he recorded appellant's responses to questions during the investigation. Appellant maintains nothing shows that Spears' notes were in fact appellant's actual responses because appellant was not given the opportunity to view the document after the interview. Not only does appellant's contention not support his allegation of perjury, but any discrepancy could have been highlighted at the hearing, where appellant was afforded an opportunity to present testimony and witnesses to corroborate his testimony, and an opportunity to cross-examine Spears. Moreover, other discrepancies between Spears' testimony and his notes do not prove Spears perjured himself at the board hearing, but instead create an issue of credibility for the board to resolve. Likewise, discrepancies between appellant's testimony and that of other witnesses simply present additional credibility issues for the board.
Appellant nonetheless contends that Spears' testimony wrongly suggests the incidents relied on to support appellant's termination occurred close to his termination in January of 1996, thus erroneously indicating appellant's behavior continued even after the verbal warning. While the record is not specific about the dates of all the incidents, at least some of them occurred prior to the verbal warning of July 26, 1995. Indeed, on cross-examination, Spears testified that he knew of only one incident subsequent to the July 26, 1995 warning, the "string incident." While the hearing officer determined other incidents occurred subsequent to July 26, 1995, the record is unclear. Nonetheless, because the "string incident" undisputedly occurred after the July 1995 meeting where appellant was warned that if his behavior continued he could be terminated, the board had sufficient evidence to determine appellant's offensive behavior continued.
Appellant, however, again asserts Spears was lying under oath, this time when he denied asking Hartman, in a November meeting, how she and appellant were getting along, to which she purportedly responded that they got along great. Appellant used Spears' handwritten notes to contradict his testimony; those notes stated Spears asked her how everything was, and she stated that she and appellant got along great. Appellant's argument discloses no contradiction between Spears' testimony and the documentation. To ask how everything is, and to inquire if two people are getting along, are two different questions. Appellant's argument is without merit.
Appellant also contends Hartman's continued denial that she accepted appellant's offer of a date is refuted by her admitting the date to Spears, proven by Spears' report and Spears' testimony. According to Spears' report of the July 1995 incident, Hartman stated appellant asked her on a date and she agreed.
Spears, however, testified that Hartman felt appellant was a little rough on her during training because she rejected appellant's offer of a date. Hartman also maintained throughout her testimony that she did not accept the date. Moreover, Spears' report states Hartman and appellant mutually agreed a date was a bad idea, and the date thus never occurred. To the extent a discrepancy exists between Spears' report and Hartman's and Spears' testimony, it presents, again, a credibility issue for the board to resolve. Moreover, appellant did not cross-examine Spears regarding the discrepancy, and thus it was not brought to the hearing officer's attention.
Regarding the "photo incident," Hartman testified that appellant commented "Hmm, too bad I can't see, you know, up the skirt." (Tr. 176.) Appellant contends that his only remark was "oh darn." Evidence indicates, however, that when McBride, also a witness to the incident, was asked if appellant said "oh darn," the question included a reference to appellant's turning the picture upside down and remarking that he could not see up her skirt. McBride responded affirmatively, and further testified to the implication. Despite appellant's efforts to make the comment seem innocuous, the evidence indicates otherwise.
In the final analysis, appellant's first and third assignments of error make numerous meritless attempts to undermine the credibility of, primarily, Spears and Hartman. Credibility determinations are within the province of the board, and the board's decision must be upheld unless it is unreasonable, unlawful, or against the manifest weight of the evidence. The board had before it a substantial amount of evidence to determine that appellant acted in an offensive manner and therefore was terminated with just cause. Accordingly, appellant's first and third assignments of error are overruled.
Appellant's second assignment of error contends that the board's decision is unlawful. Appellant contends that he was the subject of discrimination, that Trader engaged in deceptive sales practice and expected appellant to comply, and that sexual harassment was merely a pretext for Trader's terminating appellant. Even if those issues may be considered in the context of a hearing before the board, appellant presented insufficient evidence in support of those contentions. Appellant's second assignment of error is overruled.
Appellant's fourth assignment of error appears to contend that the case law the board cited is not controlling because the facts are not identical to the present case. Appellant's argument is without merit. While the facts of any case may vary as compared to another, the law remains the same. Because not all situations are identical, the Ohio Supreme Court has held that the "just cause" standard must be decided on a case-by-case basis. Vickers, supra. The cases cited are relevant to show that in similar circumstances employees have been terminated for just cause.
Accordingly, appellant's fourth assignment of error is overruled.
Appellant's fifth assignment of error regards a statement Magistrate Browning allegedly made to appellant. Because the statement is not part of the record, we have no basis to review appellant's argument and therefore overrule his assignment of error. Craven v. Craven (Aug. 10, 1999), Franklin App. No. 98AP-1125, unreported (memorandum decision).
Accordingly, appellant's fifth assignment of error is overruled.
Having overruled all of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
BROWN and TYACK, JJ., concur.